UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| NPS SYSTEMS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:08CV1568 TIA |
| | ) | |
| MYSTATEUSA, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## **MEMORANDUM AND ORDER**

This matter is before the Court on Defendant MyStateUSA's Motion for Partial Summary Judgment to Dismiss for Lack of Personal Jurisdiction or in the Alternative to Change Venue. The parties consented to this Court's jurisdiction pursuant to 28 U.S.C. § 636(c).

## **I. Facts**

Viewing the evidence in the light most favorable to the Plaintiff, NPS Systems, Inc., and determining all factual conflicts in its favor, Lakin v. Prudential Sec., Inc., 348 F.3d 704, 706 (8th Cir. 2003), the Court sets forth the following facts:

NPS is a Missouri corporation with its principal place of business in St. Louis County, Missouri. (Complaint, ¶ 1) MyState is an Idaho corporation with its principal place of business in Boise, Idaho. (Complaint, ¶ 3) In 2006, NPS and MyState entered into an agreement with the Federal Emergency Management Agency ("FEMA") to work on an Integrated Public Alert & Warning System ("IPAWS"). (Complaint, ¶ 8) NPS agreed to perform initial architectural development work in exchange for $400,000.00, which NPS did perform. (Complaint, ¶ 10) NPS asserts that despite this agreement and initial work, MyState has failed and refused to pay NPS the reasonable value of said services. (Complaint, ¶ 12) In addition, in November 2007, Sandia National

Laboratories selected NPS to perform the development and implementation work on the IPAWS project. (Complaint, ¶ 13) However, NPS had to suspend its work which resulted in terminated contracts between FEMA and Sandia and Sandia and NPS. (Complaint, ¶15)

Further, on March 19, 2008, NPS and MyState entered into a contract in which NPS agreed to perform upgrades on MyState's emergency telephone notification system. (Complaint, ¶ 26) According to the Complaint, NPS performed its duties, but MyState did not pay the balance. (Complaint, ¶ 28)

MyState is an Idaho technology vendor engaged in interstate commerce offering data management and communications hardware and software products and services. (Defendant's Statement of Undisputed Facts (Doc. #36-3), ¶ 2) MyState does not have a business presence in Missouri. (Doc. #36-3, ¶ 6) However, MyState representatives traveled to the State of Missouri on August 28, 2006 to meet with NPS and Sandia regarding the implementation of the IPAWS system. (NPS Systems Inc.'s Statement of Material Facts (Doc. #41), ¶ 6; Doc. #36-3, ¶ 26) NPS hosted the meeting at its offices in St. Louis, Missouri. (Doc. #41, ¶ 6; Doc. #36-3, ¶ 25) Further, in late May or early June of 2007, NPS and Sandia met at NPS's St. Louis office, and the MyState CEO, Claudia Bitner, participated via teleconference. (Doc. #41, ¶ 7) During this conference, Ms. Bitner suggested an arrangement where MyState would purchase the ETN system from NPS then lease the use of such system to Sandia. The parties agreed to pursue this arrangement. (Doc. #41, ¶ 7) On June 15, 2007, MyState's President and CEO, Claudia Bitner, and its Vice President, Don Barrett, traveled to St. Louis, Missouri at the request of Sandia. (Doc. #36-3, ¶ 29) That same afternoon, Ms. Bitner and Mr. Barrett met NPS senior management at the new NPS office in St. Louis, during which time NPS discussed a proposed solution for the ETN system and answered

technical questions from MyState. (Doc. #41, ¶ 8; Doc. #36-3, ¶ 32) NPS's President Harry Haury and his wife took Ms. Bitner and Mr. Barrett to dinner that evening, continuing discussions and negotiations concerning their ongoing business relationship. (Doc. #41, ¶ 8; Doc. #36-3, ¶ 32)

Two weeks later, on June 29, 2007, NPS and MyState entered into a contract which generally consisted of MyState's purchase of NPS hardware and software for the ETN system that would be part of the IPAWS project. (Doc. #41, ¶ 9; Doc. #36-3, ¶ 37) On that date, MyState signed the purchase order in the amount of $704,200. (Doc. #41, ¶ 9; Doc. #36-3, ¶ 38) In July, 2007, MyState shipped 3 servers to NPS in Missouri to be utilized in connection with the IPAWS project. (Haury Aff., Doc. #41-2, ¶ 20) MyState sent 4 payments in the cumulative amount of $792,433.81 to NPS in Missouri as compensation for goods and services provided by NPS. (Haury Aff., Doc. #41-2, ¶ 21) Despite some alleged problems with the software, MyState entered into another contract with NPS on March 19, 2008 for the purchase of additional software. (Doc. #41, ¶ 14; Doc. #36-3, ¶ 47) Further, the domicile of NPS's intellectual property which it licenses to MyState and the source code for the technology are located in Missouri, and NPS performed all the development work and support for the system in Missouri. (Doc. #41, ¶ 16)

## II. Procedural History

Plaintiff, NPS Systems, Inc. ("NPS"), filed a Complaint against Defendant, MyStateUSA, Inc. ("MyState"), in this Court on October 10, 2008. The Complaint alleges Breach of Contract, Quantum Meruit, and Slander Per Se against MyState, an Idaho corporation. On January 21, 2009, MyState filed a Motion to Dismiss or, in the Alternative, to Change Venue, arguing that this Court lacks personal jurisdiction over MyState because the Complaint failed to meet the requirements of the Missouri Long Arm Statute and Due Process. Alternatively, MyState asserted that venue was

proper in the District of Idaho, not the Eastern District of Missouri. (Doc. #12) A statement filed by Claudia Bittner, President and CEO of MyState, averred that MyState transacted no business and had minimal contact with the State of Missouri. (Doc. #12-1) NPS then filed a response, which included an affidavit of Harry Haury, the CEO of NPS. (Doc. #15) In its reply brief, MyState reiterated that NPS had not established that MyState had sufficient minimum contacts with Missouri to satisfy the Missouri Long Arm Statute and Due Process. Alternatively, MyState requested a stay for limited discovery related to the issue of MyState's contacts with Missouri and NPS.[1] (Doc. #17, p. 13)

After a hearing on May 4, 2009, the Court ordered the parties to conduct limited discovery related to the pending jurisdictional issues. The Court also denied the pending Motion to Dismiss, noting that MyState could re-file the motion, if necessary, upon completion of limited discovery. On December 14, the parties filed a Stipulation informing the Court that they had concluded limited discovery and noting that both parties determined that they would not take depositions. (Doc. #28)

On March 13, 2010, MyState filed a Motion for Partial Summary Judgment to Dismiss for Lack of Personal Jurisdiction or in the Alternative to Change Venue. NPS filed its Response on April

---

[1] MyState also filed a Motion to Strike Portions of the Affidavit of Harry Haury, which the Court denied on May 4, 2009. The undersigned has again reviewed that motion in conjunction with the pending motion to dismiss and will consider Mr. Haury's sworn statement. Courts are split on the issue of whether admissible evidence is required to establish personal jurisdiction, and the Eighth Circuit has not resolved this issue. See Citadel Inv. Group, L.L.C. v. Citadel Capital Co., ___ F. Supp. 2d ___, No. 09-0886 (JDB), 2010 WL 1233388, at *3 (D.D.C. March 31, 2010) (stating that a plaintiff is not limited to evidence meeting standards of admissibility required for summary judgment motions to establish a prima facie case of personal jurisdiction, but a plaintiff must allege specific facts and cannot rely on conclusory allegations); Xcentric Ventures, LLC v. Bird, 683 F. Supp. 2d 1068, 1071 (D. Ariz. 2010) (finding that all evidence submitted to make a prima facie showing of personal jurisdiction must be admissible to be considered). The undersigned finds, however, that because the Eighth Circuit has not specifically adopted a strict approach, "this Court will not require the Plaintiff[ ] to submit only admissible evidence to establish personal jurisdiction." Atkinson v. McLaughlin, 343 F. Supp. 2d 868, 876 n.3 (D.N.D. 2004).

16, 2010, and MyState replied on May 5, 2010. After nearly a year of discovery, the parties merely submitted affidavits to supplement the original affidavits in support of their respective positions.

### III. Legal Standards

"To survive a motion to dismiss for lack of personal jurisdiction, a plaintiff has the burden of making a prima facie showing that personal jurisdiction exists." Riceland Foods, Inc. v. SCF Marine, Inc., No. 4:09CV830 CDP, 2009 WL 2928764, at *2 (E.D. Mo. Sept. 9, 2009) (citation omitted). As previously stated, the court views the evidence in the light most favorable to the plaintiff and determines factual conflicts in favor of the plaintiff. Id. However, plaintiff must produce some evidence, and conclusory allegations are insufficient to make a prima facie case. Id. "The plaintiff's prima facie showing must be tested, not by the pleadings alone, but by the affidavits and exhibits presented with the motion[ ] and in opposition thereto." Dever v. Hentzen Coatings, Inc., 380 F.3d 1070, 1072 (8th Cir. 2004) (citation and internal quotations omitted). The party seeking to establish personal jurisdiction carries the burden of proof, and this burden does not shift to the party challenging jurisdiction. Riceland Foods, 2009 WL 2928764, at *2 (citation omitted). "While the plaintiffs bear the ultimate burden of proof, jurisdiction need not be proved by a preponderance of the evidence until trial or until the court holds an evidentiary hearing." Epps v. Stewart Info. Servs. Corp., 327 F.3d 642, 647 (8th Cir. 2003) (citations omitted).

To determine whether personal jurisdiction exists, the forum state's long-arm statute must be satisfied, and the exercise of personal jurisdiction must be consistent with due process. Wells Dairy, Inc. v. Food Movers Int'l, Inc., 607 F.3d 515, 518 (8th Cir. 2010) (citation omitted). "Missouri has construed its long-arm statute to confer jurisdiction to the fullest extent permitted by the United States Constitution." Helenthal v. Polk, No. 4:08-CV-1791 CEJ, 2010 WL 546313, at *1 (E.D. Mo.

Feb. 9, 2010) (citations omitted). Thus, the single issue before the court is whether the exercise of personal jurisdiction comports with due process. Id.

Due process requires that minimum contacts exist between a nonresident defendant and the forum states such that the exercise of personal jurisdiction is consistent with traditional notions of fair play and substantial justice. Wells Dairy, 607 F.3d at 518 (citations omitted). "'Sufficient contacts exist when the defendant's conduct and connection with the forum state are such that [it] should reasonably anticipate being haled into court there.'" Id. (quoting Bell Paper Box, Inc. v. U.S. Kids, Inc., 22 F.3d 816, 818 (8th Cir. 1994)). A defendant reasonably anticipates being haled into the forum state's court where the defendant performs some act by which it "'purposefully avails itself of the privilege of conducting activities within the forum [s]tate, thus invoking the benefits and protections of its laws.'" Id. (quoting Bell Paper Box, 22 F.2d at 818-19).

The Eighth Circuit Court of Appeals has established a five-part test to measure a defendant's contacts with the forum state:

> (1) the nature and quality of the contacts with the forum state; (2) the quantity of those contacts; (3) the relation of the cause of action to the contacts; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties.

Id. (quoting Bell Paper Box, 22 F.2d at 819). Courts evaluate personal jurisdiction under the theories of general jurisdiction and specific jurisdiction. Dever v. Hentzen Coatings, Inc., 380 F.3d 1070, 1073 (8th Cir. 2004).

Under the general jurisdiction theory, "a court may hear a lawsuit against a defendant who has 'continuous and systematic' contacts with the forum state, even if the injuries at issue in the lawsuit did not arise out of the defendant's activities directed at the forum." Id. (citation omitted).

6

Specific jurisdiction, on the other hand, requires that "the injury giving rise to the lawsuit occurred within or had some connection to the forum state." Id. (citation omitted). The third factor of the five-factor test, the relation of the cause of action to the contacts, distinguishes between the two theories. Wells Dairy, 607 F.3d at 518.

### IV.  Discussion

### A.  Personal Jurisdiction

At the outset, the undersigned finds that MyState is not subject to general jurisdiction in the State of Missouri. MyState contends, and NPS does not dispute, that MyState is not licensed to do business in Missouri, nor does it have a business presence in Missouri. MyState does not have any employees or registered agents located in Missouri. It has no real estate or business facilities in Missouri. (Doc. #36-3, ¶¶ 4-6) Although NPS has failed to demonstrate general jurisdiction, it has alleged and proved jurisdictional facts related to MyState's ongoing business relationship with NPS and the events giving rise to the present lawsuit.

In Wells Dairy, Inc. v. Food Movers Int'l, Inc., 607 F.3d 515, 520 (8th Cir. 2010), the Eighth Circuit Court of Appeals, to which this Court looks for guidance and authority, found sufficient minimum contacts to exercise personal jurisdiction over a California corporation, FMI. The court found that certain meaningful events in the parties' business relationship occurred in Iowa, the forum state, such that specific jurisdiction was established. Id. at 519. For instance, FMI sought credit approval from Wells Dairy and submitted an application to the Wells Dairy California representative, who forwarded it to the Iowa office. Id. Wells Dairy processed and approved the application in Iowa and allowed FMI to charge $6.5 million to its Wells Dairy account. Id. Further, FMI received and transferred the Wells Dairy product in Iowa and allowed its customers to take possession of the

7

products in Iowa. Id. Additionally important was the fact that FMI remitted payment to Wells Dairy in Iowa, rendering the subject matter of the dispute – failure to pay for product FMI purchased on credit – as occurring in Iowa. Id.

The Wells Dairy court recognized that FMI had no physical presence in Iowa and that its initial contacts with Wells Dairy happened in California, with communications between FMI and Wells Dairy occurring only via telephone, facsimile, and mail. Id. However, the court found that the means of communication was not dispositive of whether FMI had sufficient contacts with Iowa. Id. Instead, the court held that "FMI purposefully availed itself of the privilege of conducting activities within Iowa when it solicited an Iowa company for business, sought to purchase the Iowa company's products on credit provided by the Iowa company, negotiated and fulfilled the 'customer pick up' delivery term, and entered into more than 100 transactions over the course of two years, during which it relied on the Iowa company for customer support." Id. at 520.

As stated by the Wells Dairy court, "the determination that personal jurisdiction exists turn on the facts of each case[.]" Id. Although the facts are in dispute, the undersigned notes that NPS has presented affidavits contradicting MyState's facts, and this Court must resolve those factual conflicts in favor of NPS. Maritz Inc. v. C/Base, Inc., No. 4:06-CV-761 CAS, 2007 WL 6893019, at *1 (E.D. Mo. Feb. 7, 2001) (citation omitted).

In the instant case, while MyState argues that its contacts with Missouri were insufficient to warrant the exercise of specific jurisdiction, this Court finds that MyState's contacts were not so random or attenuated that it could not reasonably anticipate being haled into Missouri court. Even more compelling than Wells Dairy, the record demonstrates that events in the ongoing business relationship between MyState and NPS occurred in the State of Missouri. For instance, MyState

8

representatives traveled to Missouri in August 2006 to meet NPS and Sandia at the NPS offices in St. Louis and discuss the implementation of the IPAWS system. In late May or early June of 2007, negotiations ensued between NPS, Sandia, and MyState at NPS's St. Louis office, during which time MyState's President and CEO participated via teleconference. During this meeting, the parties agreed to pursue an arrangement whereby MyState would purchase the ETN system from NPS, then subsequently lease the system to Sandia.

On June 15, 2007, MyState's President and CEO and its Vice President traveled to St. Louis at the request of Sandia. However, they also met NPS senior management at the new NPS offices in St. Louis and discussed a proposed solution for the ETN system. MyState and NPS continued to discuss and negotiate their business relationship over dinner that evening. These discussions resulted in a purchase contract dated June 29, 2007, wherein MyState purchased NPS hardware and software for the ETN system, which would be part of the IPAWS project. MyState subsequently shipped three servers to NPS in Missouri and sent payment to NPS in Missouri for the goods and services provided by NPS. In addition, the purchase of this NPS hardware and software, and MyState's failure to pay, is the subject matter of this dispute, as evidenced in Counts I and IV of NPS's Complaint. Further, the March 19, 2008 upgrade documentation referenced in Count IV was prepared in Missouri.

Thus, the undersigned finds that NPS has made a prima facie case by establishing sufficient contacts in conjunction with the first three factors in the five-part test for measuring a defendant's contacts with the forum state. The nature and the quality of the contacts with the forum state were related to the ultimately successful negotiation of a contract between NPS and MyState regarding an ETN system for the IPAWS project. MyState not only visited Missouri to discuss implementation of the ETN system and the purchase of NPS hardware and software, but it also participated in

9

numerous communications via telephone, facsimile, mail, and e-mail regarding this agreement. Further, NPS's causes of action directly arise out of and relate to the negotiations and subsequent agreements culminating from these contacts within the forum state.

Additionally, with regard to the final two factors, Missouri has a strong interest in providing a forum for NPS. The domicile of the intellectual property licensed to MyState is located in Missouri, and the source codes are located in Missouri and are only accessible to NPS. All development work to build the system and the system support was performed in Missouri. Further the determination of whether the system functioned properly may require examination of the system located in either Missouri or Colorado, but not Idaho. In short, "[d]efending a case in [Missouri] may be inconvenient for [MyState], but its contacts with [Missouri] were not so random, attenuated, or fortuitous that it could not reasonably anticipate being haled into [Missouri] court." Wells Dairy, 607 F.3d at 520. Therefore, the undersigned finds that this Court's exercise of personal jurisdiction over MyState is consistent with the traditional notions of fair play and substantial justice such that MyState's motion will be denied. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476 (1985).

### B. Venue

With regard to MyState's request to change venue, the undersigned finds that a change of venue is not warranted. Under 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." Whether to grant or deny a request to transfer a case under § 1404(a) is within the trial court's sound discretion. Hubbard v. White, 755 F.2d 692, 694 (8th Cir. 1985). Further, courts give great deference to a plaintiff's choice of forum, and a party requesting transfer under § 1404(a) bears the burden of demonstrating that the transfer is justified. Anheuser-

10

Busch, Inc. v. All Sports Arena Amusement, Inc., 244 F. Supp. 2d 1015, 1022 (E.D. Mo. 2002) (citation omitted). Section 1404(a) allows transfer to a more convenient forum but not to a forum equally convenient or inconvenient. Buckeye Int'l, Inc. v. Unisource Worldwide, Inc., No. 4:05CV0839TCM, 2005 WL 2406026, at *2 (E.D. Mo. Sept. 28, 2005) (citation and internal quotation omitted).

Here, witnesses are located in both Missouri and Idaho. While MyState argues inconvenience, it has not demonstrated that MyState or its witnesses would be unable to travel to Missouri for trial or discovery. Additionally, NPS, its witnesses, and the system at issue in this case are located in Missouri. MyState has done no more than ask that the inconvenience be shifted from MyState to NPS, which is not a permissible justification for transfer under § 1404(a). Id. at *3. Further, with regard to the interests of justice, this Court is fully capable of applying the applicable state laws in this case. Id. Therefore, MyState's request to transfer venue to Idaho is denied.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant MyStateUSA's Motion for Partial Summary Judgment to Dismiss for Lack of Personal Jurisdiction or in the Alternative to Change Venue [Doc. #36] is **DENIED**.

       /s/ Terry I. Adelman  
       UNITED STATES MAGISTRATE JUDGE

Dated this   9th   day of August, 2010.